**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **CRIM. NO. 07-200 (EGS)** |
| | ) | |
| **DARYL GASKINS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO SUPPRESS PHYSICAL EVIDENCE AND ALLEGED STATEMENTS AND INCORPORATED MEMORANDUM OF LAW

Mr. Gaskins, through undersigned counsel, respectfully moves this Honorable Court to suppress physical evidence, any statements made, and any other evidentiary "fruits" of the illegal search conducted on July 19, 2007 at 1635 18th Street, SE #203, Washington, D.C.

### Factual Background

On July 19, 2007, members of the Metropolitan Police Department executed a search warrant dated that same day, for the premises located at 1635 18th Street #203, S.E., Washington, D.C. During this search, officers allegedly seized narcotics, including heroin and crack cocaine, U.S. currency, scales and drug paraphenalia, and mail matter in Mr. Gaskin's name. Mr. Gaskins and Ms. Donna Gregory were present during the search and were arrested on the basis of the search. Ms. Gregory was subsequently released and charges against her were dropped. Mr. Gaskins was charged by complaint and was held without bond.

On August 14, 2007, an indictment was handed down charging Mr. Gaskins with unlawful possession with intent to distribute in excess of 100 grams of heroin and possession

1

with intent to distribute cocaine base.  Mr. Gaskins was arraigned on this indictment on August

24, 2007.

In a letter dated September 10, 2007, the government advised that it intends to use

a number of statements by Mr. Gaskins:

> The government expects to use at trial pre-arrest admissions made by your client
> as the search warrant was being executed.  After recovering drugs in plain view
> upon entering your client's apartment, your client was asked by officers whether
> he had any other illegal items in the apartment.  Your client responded to the
> effect that "there's some stuff on my bed."  Your client also volunteered that "she
> don't have anything to do with it," apparently referring to the woman who was in
> the apartment at the time of the execution of the warrant.  Your client further
> stated that was the only person who lived in the apartment.

The affidavit in support of the search warrant failed to establish probable cause,

and thus the searches were in violation of the Fourth Amendment.  The affidavit is also internally

inconsistent in such a manner as to render it invalid.  Any statements allegedly made were made

in violation of Mr. Gaskins' Miranda rights and thus must be suppressed.

## Legal Authorities and Argument

**A.     The Affidavits in Support of the Search Warrants Do Not Establish Probable
         Cause to Search the Premises.**

The Fourth Amendment provides:

> ...and no Warrants shall issue, but upon probable cause, supported
> by oath or affirmation, and particularly describing the place to be
> searched, and the person or things to be seized.

The test for probable cause for the issuance of a search warrant is whether the

facts presented to the magistrate establish a "substantial probability" that the items sought will be

2

found at the location sought to be searched.  Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983).

The Fourth Amendment provides, in part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .".  The Fourth Amendment's protection against unreasonable searches and seizures has been construed to require probable cause for warrantless arrests and searches. Henry v. United States, 361 U.S. 98 (1959).  Probable cause exists when, under the facts and circumstances of the situation, a person of reasonable prudence would believe that a crime has been committed or is being committed.  Beck v. Ohio, 379 U.S. 89 (1964).  As stated in Johnson v. United States, 333 U.S. 10, 13-14 (1948):

> [t]he point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence.  Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.

The Constitution requires that a search warrant be issued only after a showing of probable cause.  The law allows police to interfere with an individual's right to be free from search and seizure only when the infringement is deemed reasonable.  A warrant can only be issued when "probable cause" is shown, based on reliable information of sufficient detail, that criminal activity or evidence of criminal activity will be found in the place to be searched. This requires that a nexus be shown between the place to be searched, the criminal activity and the items sought.  The nexus requirement is important.  A search warrant is not only a document authorizing a search, but also the instrument by which permissible bounds of a search are

formally limited. Police officers must limit their search to places reasonably likely to reveal the items listed in the warrant. Without reasonably particularized limitations the warrant provides no protection against a generalized search, which is invalid. The tainted fruit of the improper warrant must be suppressed.

Search warrants may be issued only upon a judicial finding of probable cause. The Fourth Amendment requires that a warrant describe with particularity "the place to be searched and the persons or things to be seized." This protection safeguards the individual's privacy interest against "wide-ranging exploratory searches." Maryland v. Garrison, 480 U.S. 79, 84 (1987).

In this case, the affidavit alleges that a reliable source provided information that heroin was being sold inside of 1635 18th Street, Apt. #203. There is no information upon which the Court can assess the reliability on the source. Purportedly on the basis of the information from the reliable source, the police sent a confidential source to attempt to purchase narcotics at that address. The affidavit does not contain any averments, other than "boiler plate" police jargon, which would support the affiant's assertion that the source of the information was reliable. Nor does the affidavit contain any information which could be used to determine the basis of the informant's knowledge. The affidavit in this case, with respect to the reliability of the source merely contains the conclusory statements of the affiant and nothing more. Other than the allegation concerning the aforementioned information from the confidential source, the affidavit merely indicates that a confidential source was utilized and that the confidential source allegedly made a single purchase of a tan rock-like substance from the aforementioned premises.

Even under the "totality of circumstances" test of Gates, the affidavit in this case

fails to meet constitutional muster.  In abandoning the "two-pronged test" of <u>Aguilar</u> and <u>Spinelli</u>, the Court maintained that the informant's veracity, reliability and basis of knowledge were factors that remained "highly relevant" in the determination of probable cause.  <u>Illinois v. Gates</u>, 462 U.S. at 230, 103 S.Ct. at 2328.  None of that information is present in this affidavit.  In fact, the affidavit in this case mirrors the "bare bones" affidavit from <u>Aguilar v. Texas</u>, 378 U.S. 108, 84 S.Ct. 1509 (1964), which, with regard to the supporting information, merely stated "affiants have received information from a credible person and do believe that heroin....are being kept at the above described premises...." Id at 1511.  The <u>Gates</u> Court, in reaffirming the inadequacy of the affidavit in <u>Aguilar</u>, stated that "this is a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause".  <u>Illinois v. Gates</u>, 462 U.S. 213, 239, 103 S.Ct. 2317, 2333 (1983).  Thus, the affidavit in this case, with respect to the reliability of  the information merely contains the conclusory statements of the affiant and nothing more.  Therefore, the affidavit in this case failed to support a finding of probable cause.

       In <u>United States v. Richardson</u>, 861 F.2d 291 (D.C. 1988), this Circuit noted that it is not clear that a single buy itself is sufficient to establish probable cause to search a location, absent further corroboration.  In <u>Richardson</u> the affidavit recounted two (2) buys allegedly made by an informant from 3531 Jay Street, N.E., Apartment 1, here in the District.  The affiant then stated that he had observed the informant walking into the described location without talking with anyone else and shortly returned to the affiant with the narcotics.  The language in the affidavit indicating that the affiant had seen the informant enter and leave "the described location" was false, since the evidence revealed that the affiant had only seen the informant enter the apartment complex.  On appeal the defendant contended that the false statement in the

affidavit vitiated probable cause under <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S.Ct. 264, 57 L.Ed.

2d 667 (1978).  The defendant's argument was rejected because of his failure to show that the

admittedly false statement was made knowingly and intentionally or in reckless disregard for the

truth.  <u>Id</u> at 294.  However, the court did note that "it is unclear whether the fact of the controlled

buy alone is sufficient under such circumstances to demonstrate probable cause without other

corroborating evidence." <u>Id</u>.  The court further noted that the <u>Richardson</u> affidavit did not supply

corroborating evidence, such as that found in other cases where independent police investigation

established that the person who allegedly sold the drugs to the informant was the lessor, owner,

or resident of the apartment.

　　　　　Here, the affidavit alleges only the single buy.  It does not allege any facts to

support an inference that the property searched was the center of ongoing illicit drug business.

There is nothing in the affidavit to indicate that the informant, while making the single purchase,

observed other narcotics, narcotics paraphernalia such as packaging materials or scales, firearms,

or any other indicia or description of the individual who allegedly sold the narcotics to the source

or the nexus of that individual to the apartment.  Thus, there is nothing in the affidavit to indicate

that the seller was anything more than a casual visitor or temporary user of the apartment.

　　　　　The flimsiness of the allegations in the affidavit in this case is striking when

compared with those present in reported cases which have upheld search warrants based on

controlled buys in conjunction with other corroborating circumstances.  <u>See</u> <u>Jones v. United</u>

<u>States</u>, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697 (1960) (Informant indicated defendants kept

"ready supply" of heroin in their bedroom in a specific described location in bedroom; informant

had made several purchases from said location in past; affiant had also received information from

6

other sources that named defendants, who resided in said apartment, were engaged in drug

trafficking); United States v. Pigrum, 922 F.2d. 249 (5th Cir. 1991)(Agents immediately

proceeded to get search warrant after controlled purchase and searched within 2 hours of

purchase; purchase made from residence of identified individual; police officers listening to

purchase via transmitter); United States v. Romo, 914 F.2d. 889 (7th Cir. 1990)(Purchase made

from residence of defendant, who was identified by informant; purchase also made from

defendant's business; informant observed large quantity of drugs and drug paraphernalia within

both business and residence within 72 hours of warrant application"; United States v. Harper,

802 F.2d. 115 (5th Cir. 1986)(Affiant had corroborated informant by surveilling defendant's

motel room, where purchase was made, and had seen several known drug dealers and users enter

room; informer indicated he saw quantities of narcotics in the room other than that which he

purchased; purchase made within 24 hours of issuance of warrant; informant within view of

affiant from time of initial pat-down until his return, except when in motel room); United States

v. Moreno, 758 F.2d. 425 (9th Cir. 1985)(Purchase made from named individuals; investigation

showed "heavy foot traffic" in and out of defendant's apartment; further corroboration from four

anonymous telephone callers reporting suspicion of drug trafficking at defendant's apartment;

defendant had previously told police that a robbery at his apartment was in retaliation for a "drug

rip-off"); United States v. Thompson, 751 F.2d. 300 (8th Cir. 1985)(Informant had indicated that

he had observed named individual selling drugs in defendant's residence, that defendant had a

firearm, that the defendant sells drugs on a regular basis from the apartment, and that the

defendant lives in the apartment with a black female exotic dancer; affiant had corroborated

many details and obtained other corroborating information concerning defendant's relationship to

apartment); <u>United States v. Rodgers</u>, 732 F.2d. 625 (8th Cir. 1984)(within 72 hours informant had been in defendant's residence and observed large quantities of cocaine; informant later made controlled buy directly from defendant in defendant's bedroom; officers had received prior information that defendant was selling large quantities of cocaine; other officers had made other purchases of cocaine from defendant).

In contrast to these cases, the affidavit here alleges only a single purchase from an individual with no additional corroboration.  This, it is submitted, is insufficient to establish probable cause to issue a warrant to search that location.

**B.    The Evidence Should Be Suppressed After a Hearing Pursuant to <u>Franks v. Delaware</u> and its Progeny.**

The evidence should be suppressed because the warrant was based upon an affidavit that was false in material respects because it omitted critical facts that would have undermined the basis for the issuing judge's probable cause finding and appears to have misstated other facts.

Generally speaking, "in order to challenge [an] affidavit successfully, the defendant must show that (1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth."  <u>United States v. Richardson</u>, 861 F.2d 291, 293 (D.C. Cir. 1988) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978)).  A "false statement" may include a material omission.  <u>See</u>, <u>e.g.</u>, <u>United States v. Johnson</u>, 696 F.2d 118 n.21 (D.C. Cir. 1982) ("the reasoning of <u>Franks</u> 'logically extends . . . to material omissions'" (<u>citing</u> 2 W. LaFave, <u>Search and Seizure</u> § 4.4 (Supp. 1982)).

In this case, the affidavit is internally inconsistent. The boilerplate language regarding the affiant's experience does not address heroin at all. In fact, it specifically addresses cocaine base. Additionally, in what is clearly an attempted amendment to the warrant, in an effort to explain why the description of the drug seems to match that of crack cocaine rather than heroin, the affiant writes "[t]he sale to a special employee described in this affidavit was not for a typical "street" bag or dose of heroin, but for a larger quantity at an apparently higher level of purity." Yet, in the description of the sale earlier in the affidavit, it sounds like a typical street level bag when it is described as "1 green ziplock bag." This is further supported by the photographs of the narcotics subsequently seized.[1] For these reasons, a Franks hearing should be conducted, and the evidence suppressed following such as hearing.

**C.      The Court Should Not Rely upon the Good Faith Exception of United States V. Leon to Admit the Evidence.**

Evidence obtained pursuant to an improperly issued warrant will be excluded if the officer's reliance on the warrant was not "objectively reasonable." United States v. Leon, 468 U.S. 897, 919-20 (1984); Massachusetts v. Sheppard, 468 U.S. 981, 990 (1984). The burden is on the government to establish objective good faith. Leon, 468 U.S. at 924.

In Leon, 468 U.S. 897, 104 S.Ct. 3405 (1984), the Court held the exclusionary rule did not bar introduction of evidence obtained in reasonable reliance on a search warrant issued by a neutral magistrate but later found to be invalid for lack of probable cause. However, defendant submits that Leon does not stand as authority for resuscitation of the otherwise invalid

---

[1]      The defendant is also filing a separate motion to compel discovery of evidence surrounding the alleged sale to the confidential informant. Although the government has indicated it does not intend to illicit testimony about that sale, based upon the discrepancies in the warrant, we have a good faith basis to believe it may be exculpatory.

search warrant in this case.

      The good faith exception in <u>Leon</u> does not apply (1) where the requesting officer recklessly misleads the magistrate or (2) where the magistrate abandons his traditional role or (3) where a warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable", <u>cite omitted</u>, or (4) where the warrant itself is so fatally deficient for, among other things, failing to particularize the things to be seized, that the officers cannot reasonably presume it to be valid. 468 U.S. at 923.

      Several circuits have refused to routinely apply the <u>Leon</u> good-faith exception. <u>See</u> <u>United States v. Barrington</u>, 806 F.2d 529 (5th Cir. 1986).  (<u>Leon</u> inapplicable where warrant based on "bare bones affidavit" and officer' reliance thereon not objectively reasonable); <u>United States v. Jackson</u>, 818 F.2d 345 (5th Cir. 1987) (<u>Leon</u> inapplicable where affidavit "totally lacking in indicia of reliability" and therefore a "bare bones affidavit.")'  <u>United States v. Fuccillo</u>, 808 F.2d 173 (lst Cir. 1987) (<u>Leon</u> inapplicable where officers reckless in preparing affidavit); <u>United States v. Leary</u>, 43 Crl. 2140 (10th Cir. 1988) (warrant which was overbroad due to insufficient description of items to be seized not saved by <u>Leon</u> as agents cannot reasonably rely on such a warrant); <u>United States v. Crozier</u>, 777 F.2d 1376 (9th Cir. 1985) (search warrant authorizing a general search facially overbroad and not saved by <u>Leon</u> and executing officer could not act in good faith and in reasonable reliance thereon); <u>United States v. Strand</u>, 761 F.2d 449 (8th Cir. 1985) (<u>Leon</u> inapplicable where search went beyond face of warrant).

      Mr. Gaskins asserts that the affidavit in this case is indeed nothing more than a "bare bones" affidavit, whose indicia of probable cause is so lacking as to negate any assertion that it was acted upon in good faith.  Additionally, the internal inconsistencies in the warrant

suggest it could not reasonably have been relied upon. Therefore, all of the evidence seized as a result of this illegal search must be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963).

**D.    The Alleged Statements Should Also Be Suppressed**

All of the statements were made while Mr. Gaskins was in custody, before he was read his Miranda warnings, and in response to questions from the officers. Therefore, they must be suppressed. Prior to questioning Mr. Gaskins, the police were obligated to advise him of his rights. The government must prove that the officers did so and that they obtained a knowing and voluntary waiver. See Tague v. Louisiana, 444 U.S. 469, 471 (1980) (any waivers must be shown to be understanding). The government has provided no evidence in discovery that at the time Mr. Gaskins made the alleged statements he had been advised of his Miranda warnings. At the time of the statement, he had been seized for purposes of the Fourth Amendment in that a reasonable person in his circumstances would not have felt that he was free to leave. United States v. Mendenhall, 446 U.S. 210 (1980).

Since the statements he made subsequent to his illegal arrest were the tainted fruits of that arrest, they must be suppressed. Taylor v. Alabama, 457 U.S. 687 (1982); Dunaway v. New York, 442 U.S. 200, 220 (1979); Wong Sun v. United States, 371 U.S. 471 (1963). Additionally, the government must demonstrate that the statements were made voluntarily. Lego v. Twomey, 404 U.S. 777 (1972). The Court must consider the "totality of the circumstances" in deciding whether Mr. Gaskins made his statement voluntarily. Fikes v. Alabama, 352 U.S. 191 (1957). See also Gallegos v. Colorado, 370 U.S. 49 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny

11

of the facts of each individual case); Clewis v. Texas, 386 U.S. 707 (1967).  Specifically, the

Court must examine the efforts to overbear Mr. Gaskins' free will in relation to his capacity to

resist those efforts.  Davis v. North Carolina, 384 U.S. 737 (1966); Culombe v. Connecticut, 367

U.S. 568, 607 (1961).  The Court must examine Mr. Gaskins' "background, experience, and

conduct," North Carolina v. Butler, 441 U.S. 369, 375 (1979),  to determine whether his

statement was the product of a rational intellect and a free will.  Blackburn v. Alabama, 361 U.S.

199, 208 (1980).

## CONCLUSION

Therefore, for the foregoing reasons and for any which may occur to the Court at a

full hearing on this motion, it is respectfully requested that the Motion To Suppress be granted.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
MICHELLE PETERSON
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC  20004
(202) 208-7500

12

IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Crim. No. 07-200 (EGS) |
| | ) | |
| DARRYL GASKINS | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER**

Upon consideration of defendant's Motion to Suppress, it is hereby

ORDERED that the motion is GRANTED.

SO ORDERED.

_____
THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

DATE: