UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 07-200 (EGS) |
| | ) | |
| DARRYL GASKINS | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
AND MOTION TO COMPEL DISCOVERY**

The United States, by and through its attorney, the United States Attorney for the

District of Columbia, respectfully opposes defendant's motion to suppress evidence and

statements, and motion to compel discovery. In support of its opposition, the Government

relies on the following points and authorities and such points and authorities as may be

cited at a hearing on the motion.

**Factual Background**

On July 19, 2007 at approximately 8:00 p.m. members of the Metropolitan Police

Department ("MPD") executed a search warrant at 1635 18th Street, SE, apartment 203 in

Washington, DC.  The search warrant had been signed that same day by an Associate

Judge of the Superior Court of the District of Columbia.

The affidavit in support of the search warrant stated that on July 18, 2007, a

confidential source ("CS") went into 1635 18th Street, SE apartment 203 and purchased

one ziplock bag that contained heroin.  The affidavit stated that the CS had been used on

previous occasions by members of MPD's Sixth District to purchase illegal drugs, had

proven itself reliable, and had never provided false information to the affiant.  Id.

Immediately before entering apartment 203, the search warrant affidavit stated the CS was searched and found to be free of money and illegal drugs. The CS was then given MPD prerecorded funds so that it could purchase an amount of heroin from apartment 203. The CS went inside apartment 203 and made contact with a black male individual with whom it engaged in a brief conversation about purchasing heroin. The CS observed the individual going into a bedroom in the apartment and then returning a few minutes later with a green ziplock bag that contained a tan rock-like substance that he gave to the CS in exchange for the pre-recorded MPD funds. The CS then left the apartment and immediately returned back to a pre-arranged location where it made contact with MPD officers. The CS gave the MPD officers the ziplock bag that contained the tan rock-like substance. The officers conducted a field test on the tan rock-like substance. The field test indicated that the tan rock-like substance obtained by the CS inside of apartment 203 was a member of the opiate group.

Once the officers executed the search warrant and entered the apartment, the officers found the defendant and an individual named Donna Gregory inside. The defendant and Ms. Gregory were both secured by being placed in handcuffs. The officers immediately saw a ziplock bag of heroin on the floor underneath the dining room table. The officers also found on the floor underneath a table in the living room an additional 4 ziplock bags of heroin. A glass plate with powder residue and 2 razor blades were recovered from on top of the table in the living room. The officers also searched the defendant and found 35 ziplock bags of crack cocaine on his person. The defendant was then asked who lived in the apartment, and whether there was anything else in the apartment. The defendant responded that there was some "stuff" on his bed in the

bedroom, and then stated that everything in the apartment belonged to him and that Ms. Gregory didn't have anything to do with it.

A search of the defendant' bedroom revealed the following items on the bed:  (1) a plastic bag containing heroin, (2) a small green ziplock bag containing heroin, (3) several bags filled with green, red and clear small ziplock bags, (4) a cell phone, and (5) $2,350 in cash.  Two ziplock bags containing heroin was recovered from the night table beside the bed.  Three digital scales, $1,325 in cash, mail matter with the defendant's name, and the defendant's identification card were recovered from a cabinet in the bedroom.  Recovered from inside the bedroom closet was $6,310 in cash.  Recovered from behind a plumbing that was in the bedroom was a plastic bag that contained approximately 400 grams of heroin.

The defendant argues in his motion to suppress evidence and statements that the search warrant affidavit failed to establish probable cause, that the search warrant is invalid because statements in the search warrant affidavit are internally inconsistent, and that the statements made by the defendant are in violation of the defendant's <u>Miranda</u> rights.  In his motion to compel discovery, the defendant argues that it is entitled to information regarding the purchase of heroin made by the CS at the defendant's home that is the basis of the warrant.  All of these arguments are wholly without merit and fail for the reasons discussed below.

## **Legal Authorities and Argument**

### I.    **The Defendant's Challenge To The Search Warrant Affidavit is Meritless**

The search warrant issued for the defendant's residence was supported by an affidavit indicating that a confidential police informant of demonstrated reliability had

personally purchased illegal drugs from someone inside the defendant's home within the preceding seventy-two hours.  The defendant contends that the warrant affidavit failed to establish probable cause for the search.  This claim is meritless.

A magistrate's task in reviewing a search warrant affidavit for probable cause "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 U.S. 213, 238 (1983).  "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"  Id. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).  See United States v. Webb, 255 F.3d 890, 904 (D.C. Cir. 2001).  A reviewing court examines only "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."  Massachusetts v. Upton, 466 U.S. 727, 728 (1984).

Informants' tips "come in many shapes and sizes from many different types of persons."  Gates, 462 U.S. at 232.  When a search warrant affidavit relies in whole or in part on a tip, the informant's veracity, reliability, and basis of knowledge "are all highly relevant in determining the value of his report."  Id. at 230.  A reviewing magistrate should consider the "affidavit in its entirety, giving significance to each relevant piece of information and balancing the relative weights of all the various indicia of reliability (and unreliability) attending the tip."  Upton, 466 U.S. at 732.

"In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically

sufficient." <u>United States v. Leon</u>, 468 U.S. 897, 921 (1984).  Accordingly, suppression of evidence obtained pursuant to a search warrant later determined to be deficient is unwarranted if officers acted with "objective good faith" in obtaining and executing the warrant.  <u>Id.</u> at 920-21.  This "good faith" exception is inapplicable only "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."  <u>Id.</u> at 926.  <u>See</u> <u>United States v. Salamanca</u>, 990 F.2d 629, 634 (D.C. Cir.), <u>cert</u>. <u>denied</u>, 510 U.S. 928 (1993).

    **A.**    **<u>The Search Warrant Affidavit Established Probable Cause</u>.**

The search warrant affidavit indicates that a confidential informant, who had been working with law enforcement and had consistently provided reliable and accurate information to the authorities, personally purchased illegal drugs from inside the 18th Street address.

The defendant argues that the search warrant affidavit is deficient because it relies upon information provided by a confidential police informant of demonstrated reliability who had personally purchased illegal drugs from someone inside the defendant's home within the preceding seventy-two hours of the warrant having been obtained.  The defendant argues that the search warrant affidavit is insufficient to establish probable cause because it only alleges one controlled buy of heroin from the defendant's apartment and because the affidavit contains "'boiler plate' police jargon" to "support the affiant's assertion that the" confidential source is reliable.

The defendant relies on dicta in <u>United States v. Richardson</u>, 861 F.2d 291 (D.C. Cir. 1998) to support his argument that one controlled buy is insufficient to establish probable cause because no there is no case that stands for the proposition that one

controlled buy of illegal drugs is insufficient for a finding of probable cause in a search

warrant.  Instead, "a 'comon sense view of the realities to the realities of normal life,'

leads to the conclusion that a residence contains drugs when a person enters that

residence with no drugs and exits approximately one minute later with drugs."  United

States v. Horne, 198 Fed.Appx. 865, 871 (11th Cir. 2006).  See also United States v.

Sidwell, 440 F.3d 865, 869 (7th Cir. 2006) (concluding that a controlled buy established

probable cause that a residence contained drugs when a "confidential informant entered

the building without contraband" and "exit[ed] moments later" with cocaine).

　　　　The affidavit also provided ample reason for the magistrate to credit the

informant, by virtue of the informant's "track record" of supplying reliable information –

and no unreliable information – to law enforcement, which had included controlled buys

of narcotics.  See Davis, 617 F.2d at 693 (one method of establishing informant's

veracity is through history of providing police with accurate information); United States

v. Gabrio, 295 F.3d 880, 883 (8th Cir.) (statement in affidavit that informant had

provided reliable information on at least two prior occasions and had returned stolen

property to law enforcement established reliability), cert. denied, 123 S. Ct. 390 (2002);

United States v. Fairchild, 940 F.2d 261, 264 (7th Cir. 1991) (detective's assertion of

personal knowledge of informant's veracity, combined with informant's personal

observation of contraband, established that tip was credible).  The affidavit also made

clear that the informant had previously provided reliable information specifically

regarding illegal drugs, which strengthened the basis for crediting the informant's

observation in this case.  See  United States v. Smith, 182 F.3d 473, 479 (6th Cir. 1999)

(key consideration is whether informant has provided reliable information in past about same type of criminal activity that is the subject of warrant).

The defendant minimizes the relevance of the informant's "track record," claiming that it does not "compensate" for the affidavit's lack of details about the informant's observation, or the alleged failure of law enforcement to corroborate the tip. Under the "totality of circumstances" analysis of Gates, however, an affidavit need not corroborate or include extensive details about a tip, if the tip itself is based on personal observation and the source of the tip is, as here, shown to be reliable. See Smith, 182 F.3d at 479-80 (where informant has proven track record, corroboration of tip not essential as long as there is sufficient indication of his basis of knowledge (e.g., firsthand observation)).

**B.      The Defendant Is Not Entitled To An Evidentiary Hearing
          Pursuant to Franks v. Delaware**

The defendant claims that the search warrant affidavit is false in material respects because the affiant did not specifically address his experience regarding the distribution of heroin. Based on this meritless and unsupported allegation, the defendant is demanding a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

The search warrant affidavit describes the affiant's experience as a law enforcement officer regarding the distribution of illegal controlled substances, which includes (1) being trained as a narcotics officer, (2) narcotics training and instruction from the Maurice T. Turner Institute of Police Science, (3) involvement in over two hundred drug related arrests, and (4) involvement in the execution of over fifteen narcotics related search warrants. The affidavit then describes what the affiant's knowledge regarding narcotics trafficking based on his training, experience, and

extensive participation in narcotic and drug related offenses.    Among the thirteen paragraphs that describe the affiant's knowledge regarding the distribution of illegal controlled substances, there is one paragraph regarding the distribution of cocaine base, also known as crack.  There is nothing inaccurate or misleading about the description of the affiant's knowledge, training, and experience regarding the sale of illegal controlled substances.

The test for reviewing the allegation that a warrant was based on a false affidavit derives from the United States Supreme Court's decision in Franks v. Delaware, 438 U.S. 154 (1977).  While the precise question in Franks was whether the defendant was entitled to an evidentiary hearing on the issue of falsity, subsequent judicial decisions have applied the Franks test in ruling on the validity of the warrant even after the facts relating to the alleged falsity of the supporting affidavit have been determined. United States v. Richardson, 861 F. 2d 291, 293 n. 2 (D.C. 1988) (citations omitted), cert. denied 489 U.S. 1058 (1989).   Thus the test to be applied as to whether the defendant is entitled to an evidentiary hearing on the issue of the alleged falsity of the statements in the affidavit, or whether statements proven to be untrue invalidate the warrant, is the same.

There is a "presumption of validity" of such affidavits, and the rule announced in Franks with respect to entitlement to an evidentiary hearing "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." Franks, 438 U.S. at 167. In order to be entitled to an evidentiary hearing a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false

statement is necessary to the finding of probable cause" <u>Id</u>. at 155-156. <u>See also</u>

<u>Richardson</u>, 861 F. 2d at 293. The defendant must make a substantial showing therefore

that three facts are true: first, that the affidavit contains a false statement, second, that the

absence of the false statement in the affidavit would negate probable cause, and third, that

the affiant made the false statement with the requisite scienter, that is, knowingly or with

a reckless disregard for the truth. <u>Id</u>. at 293-294 (declining to decide whether an

inaccuracy in a warrant affidavit was material to probable cause in the absence of a

contention that it was made intentionally or with reckless disregard for the truth).

The defendant fails to show that any of the factors required by <u>Franks</u> have been

met. First, the defendant fails to allege that the affidavit even contains a false statement.

Instead the defendant alleges that the affidavit fails to discuss the affiant's experience

regarding the distribution of heroin. That is false, as the affidavit contains three pages

that discuss the affiant's training, experience and knowledge regarding the distribution of

illegal controlled substances and narcotics trafficking. Second, the defendant fails to

describe how the alleged omission regarding the affiant's experience in the heroin

negates the finding of probable cause. That is because the defendant cannot do so.

Finally, because the defendant has failed to even identify a false statement within the

search warrant affidavit, he cannot establish the scienter requirement. Therefore, the

defendant has failed to establish the facts necessary to merit a <u>Franks</u> hearing.

### C.    <u>The Good-Faith Exception To The Exclusionary Rule Also Applies.</u>

Even if there were a valid basis on which to challenge the affidavit (which there is

not), the good-faith exception would preclude a remedy under the exclusionary rule. <u>See</u>

<u>Leon</u>, 468 U.S. at 922 ("the marginal or nonexistent benefits produced by suppressing

evidence obtained in objectively reasonable reliance on a subsequently invalidated search

warrant cannot justify the substantial costs of exclusion"); Salamanca, 990 F.2d at 634.

Under Leon, however, an inaccuracy in an affidavit renders the good-faith

exception inapplicable only "if the magistrate or judge in issuing a warrant was misled by

information in an affidavit that the affiant knew was false or would have known was false

except for his reckless disregard of the truth." Leon, 468 U.S. at 923. Assuming that the

affidavit was inaccurate about the affiant's experience regarding the distribution of

heroin, the defendant has made "absolutely no showing that [the affiant] made the

statements with scienter," and thus cannot exclude the possibility – indeed, probability –

"that the affidavit was infected by nothing more than honest error." United States v.

Richardson, 861 F.2d 291, 293, 295 (D.C. Cir.), cert. denied, 489 U.S. 1058 (1989). The

defendant also cannot demonstrate that the alleged inaccuracy was material to probable

cause.

The defendant's second argument is that the good-faith exception is inapplicable

because the search warrant affidavit does not establish probable cause. A warrant

affidavit will preclude application of the good-faith exception only if it is "so lacking in

indicia of probable cause as to render official belief in its existence entirely

unreasonable." Leon, 468 U.S. at 923 (internal quotations and citation omitted). "This is

a difficult standard." Fairchild, 940 F.2d at 264. The defendant does not meet it. The

affidavit here described the personal observation of a reliable informant who purchased

heroin from an individual inside of the defendant's home. That showing is adequate for

probable-cause purposes by any measure; the officers here certainly "manifested

objective good faith" by relying on the warrant. Leon, 468 U.S. at 924.

## II.    The Defendant's Statements Were Voluntarily Made And Therefore Admissible To Impeach The Defendant Or In The Government's Rebuttal Case

The government does not intend to use the defendant's statements in its case in chief. The government does, however, reserve the right to use the defendant's statements to impeach the defendant should he testify during the trial or in its rebuttal case, if warranted.

While statements obtained in violation of <u>Miranda</u> are inadmissible in the government's case-in-chief, all "voluntary statement are admissible to impeach a defendant's trial testimony even if taken in violation of <u>Miranda</u>'s prescriptions."<u>(Darryl) Turner v. United States</u>, 761 A.2d 845, 853 (D. C.2000) (internal citation omitted)."The reason for this limitation of the exclusionary rule is to prevent a defendant from turning the <u>Miranda</u> shield against illegal police methods into a license to commit perjury." <u>Id.</u> (internal quotation marks and citation omitted).

The Government submits that the defendant made the statements voluntarily, and therefore, should be admitted for purposes of impeachment or rebuttal, if warranted. <u>See United States v. Rhodes</u>, 886 F.2d 375, 378 (D.C. Cir. 1989); <u>Oregon v. Hass</u>, 420 U.S. 714 (1975); <u>Harris v. New York</u>, 401 U.S. 222, 224-26 (1971) ("The shield provided by <u>Miranda</u> cannot be perverted into a license to use perjury by way of defense, free from the risk of confrontation with prior inconsistent statements"). The defendant's statements in the instant case were voluntary. The voluntariness of a statement is evaluated under the totality of the circumstances test. The standard for determining whether a statement was made voluntarily is whether it was "the product of an essentially free and unconstrained choice by its maker." <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961) (quoted with

approval in <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 225-26 (1973)). For these reasons, the defendant's statements should not be suppressed.

The evidence here shows an absence of circumstances that would support a finding that the challenged statements were not voluntary. For example, there is no evidence or claim of physical abuse, see, e.g., <u>Arizona v. Fulminante</u>, 111 S. Ct. 1246 (1991), or threat of loss of employment, <u>Garrity v. New Jersey</u>, 385 U.S. 493 (1967). Moreover, there is no evidence that the defendant had a mental or physical condition which would render the statements involuntary for purposes of impeachment, see, e.g., <u>Colorado v. Spring</u>, 479 U.S. 564. The government should thus be entitled to present these statements for impeachment purposes at trial even if the Court finds them to have been obtained in violation of <u>Miranda</u>.  Because, even assuming, arguendo, that the defendant's statements were obtained in violation of his <u>Miranda</u> rights, the statements are admissible for impeachment purposes despite such violation if the evidence at the hearing demonstrates that the statements were voluntarily made. <u>Harris v. New York</u>, 401 U.S. 222, 224-26 (1971); <u>United States v. Moore</u>, 104 F.3d 377, 388 (D.C. Cir. 1997) (noting use of statements made in violation of <u>Miranda</u> as impeachment material).

**III.    The Defendant Is Not Entitled To Disclosure of the Confidential Informant**

The defendant is asking this Court to order the government to make available information regarding information regarding the confidential source used to secure the search warrant for the defendant's residence.  The defendant does not cite to one case that supports this request, but instead argues that Federal Rule of Criminal Procedure 16(a)(1)(E) requires such disclosure.  The defendant's motion to compel fails to cite any supporting cases because there are no such cases.  This motion to compel is a meritless

attempt to make an end run around the requirements of <u>Roviaro v. United States</u>, 353 U.S. 53 (1957).

    A.    **Legal Principles**

The government may "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." <u>Roviaro</u>, 353 U.S. at 59. This "informer's privilege" "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." <u>Id.</u>

"The scope of the privilege is limited by its underlying purpose." <u>Roviaro</u>, 353 U.S. at 60. The privilege does not apply once the identity of an informer is known, or when the disclosure of a communication will not reveal the informer's identity. <u>Id.</u> The privilege also "give[s] way" when disclosure of an informer's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." <u>Id.</u> at 60-61. The propriety of disclosure will depend on the particular circumstances of each case, "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." <u>Id.</u> at 62. <u>See Rugendorf v. United States</u>, 376 U.S. 528, 534-35 (1964).

A defendant bears a "heavy burden" to "establish that the identity of an informant is necessary to his defense"; this burden is not met by "mere speculation that the informer might possibly be of some assistance." <u>United States v. Skeens</u>, 449 F.2d 1066, 1070 (D.C. Cir. 1971) (internal quotations and citation omitted). <u>See United States v. Mangum</u>, 100 F.3d 164, 172 (D.C. Cir. 1996).

**B.    Analysis**

This Court frequently has observed that "Roviaro does not require disclosure of an informant who was not an actual participant in or a witness to the offense charged." Skeens, 449 F.2d at 1071.  See Warren, 42 F.3d at 654; United States v. James, 466 F.2d 475, 477 (D.C. Cir. 1972).  Thus, the identity of an informant who "merely suppl[ies] information" that is then used by law enforcement to obtain a search warrant or for another investigative purpose generally is not subject to disclosure.  Skeens, 449 F.2d at 1070; Warren, 42 F.3d at 654; United States v. Whitmore, 480 F.2d 1154, 1155 (D.C. Cir. 1973); United States v. Lapsley, 263 F.3d 839, 841 (8th Cir. 2001) (informant "must be more than a 'mere tipster' to justify disclosure").

These principles defeat the defendant's claim.  The defendant concedes in his motion to compel that the informant provided information that supported the search warrant.  The defendant does not claim, because he can't, that the informant also was "a witness to the offense."  The defendant was charged with possession of drugs on July 19, 2007, the day the search warrant was executed.  As in Warren, "[t]he informant was not present during that search."  Warren, 42 F.3d at 654.

WHEREFORE, the government respectfully requests that the defendant's motions to suppress evidence and statements, and to compel discovery be denied.

Respectfully submitted,
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498-610


By: _____/s/_____
LOUIS RAMOS
Assistant United States Attorney
Bar No. 472-176
555 4th Street, N.W., Room 4243
Washington, DC 20530
(202) 305-2195

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIM. NO. 07-200 (EGS) |
| | ) | |
| DARRYL GASKINS | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER**

Upon consideration of defendant's motion to suppress physical evidence and the

government's opposition, it is hereby

**ORDERED** that defendant's motion is **DENIED.**

Upon consideration of defendant's motion to suppress statements and the

government's opposition, it is hereby

**ORDERED** that defendant's motion is **DENIED.**

Upon consideration of defendant's motion to compel discovery and the

government's opposition, it is hereby

**ORDERED** that defendant's motion is **DENIED.**

**SO ORDERED.**


_____
THE HONORABLE EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE


DATE: